UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
VANETTE FISHER, on behalf of CIARA
CORNER,

       Plaintiff,

           MEMORANDUM & ORDER
  v.                  05-CV-4320

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.
----------------------------------------------------------X
GARAUFIS, United States District Judge.

      Vanette O. Fisher ("Plaintiff"), acting pro se, brings on behalf of her daughter Ciara Corner ("Ciara") this action pursuant to Section 405(g) of the Social Security Act, 42. U.S.C. §§ 405(g). The Plaintiff challenges and seeks review of the determination of Administrative Law Judge Mark J. Hecht ("the ALJ"), denying her application for Supplemental Security Income (SSI) benefits. The Plaintiff provides additional evidentiary support to this court, which she contends would substantially support a finding that Ciara is eligible for SSI. The Commissioner and the Plaintiff have cross-moved for judgment on the pleadings. For the reasons set forth below, the decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

## I.    Background

### A.    Procedural History

      On behalf of her daughter Ciara, the Plaintiff filed an application for SSI benefits on November 22, 2002. She claimed that due to attention deficit hyperactivity disorder ("ADHD"), anxiety, and anemia, Ciara is eligible for SSI benefits. (Transcript of Record ("Tr.") at 29, 44.)

The Social Security Administration denied the application at the initial level on April 28, 2003. (Id. at 24-27.)

On May 14, 2003, the Plaintiff requested a hearing before an ALJ. After a hearing on October 12, 2004, the ALJ determined that the Plaintiff was not eligible for disability benefits because Ciara's impairments were not medically or functionally equal to an impairment listed in Appendix 1 of the regulations. (Id. at 9-17.) This decision became final on August 26, 2005, when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (Id. at 5.) The Plaintiff then timely filed the instant action seeking review of the Commissioner's decision.

    **B.**    **The Plaintiff's Medical History**

    *1. Attention Deficit Hyperactivity Disorder*

Ciara has received treatment as an outpatient in the child psychiatry department at Brookdale Hospital ("Brookdale") since November 19, 2002. (Id. at 115.) The Plaintiff initially sought treatment for Ciara at Brookdale due to Ciara's behavior problems in school, which included instances of Ciara disturbing class, crawling on the floor, and throwing books. (Id. at 101.) A letter regarding Ciara's treatment at Brookdale indicates that she was prescribed Ritalin as of April 14, 2003. (Id. at 115)

On April 18, 2003, a social worker at Brookdale, Evelyn D. D'Lugin, completed a functional assessment report on Ciara, which was signed by a medical doctor. This report does not indicate the duration or extent of D'Lugin's relationship with Ciara. D'Lugin diagnosed Ciara as suffering from adjustment disorder with anxiety and ADHD. (Id. at 98, 101.) D'Lugin's report also noted that Ciara was prescribed Ritalin for her ADHD symptoms as of

2

April 14, 2003.  (Id. at 99.)

Ciara received medical treatment from pediatrician Dr. Svetalana Spivak between March 1, 2003 and September 7, 2004.  (Id. at 111.)  On September 7, 2004, Dr. Spivak completed a medical report that described Ciara as having a history of ADHD, anemia, and urinary tract infection.  (Id. 111-114.)  Dr. Spivak reported that Ciara was prescribed Ritalin for ADHD.  (Id. at 114.)  Dr. Spivak also noted that she saw Ciara four to five times per year.  (Id. at 111.)

On April 21, 2003, a state agency physician, Dr. George Wing, completed a record review as part of the Social Security Agency's initial determination of the Plaintiff's SSI claim.  In his report, Dr. Wing noted the diagnoses of ADHD and anxiety disorder.  (Id. at 105-110.)  Based on review of the information provided by Brookdale and Ciara's teacher, Dr. Wing concluded that Ciara did not have marked limitations in the domains of "Acquiring and Using Information" and "Attending and Completing Tasks."  (Id. at 107.)  Although Dr. Wing found that Ciara had a marked limitation in the domain of "Interacting and Relating with Others," he concluded that, overall, Ciara's condition was not medically or functionally equal to any of the impairments listed in Appendix 1 of the regulations.  (Id. at 105, 107.)

### 2. Hearing Problems

Dr. Spivak referred Ciara to an audiologist, Dr. Joseph Castellano, for an ear problem. (Id. at 35.)  On March 22, 2001, Dr. Castellano diagnosed Ciara with mild bilateral conductive hearing loss and recommended an ENT (ear, nose, and throat) evaluation and re-testing within six months.  (Id. at 60-61.)  Dr. Spivak also referred Ciara to Dr. M. Rashid Chaudry.  On April 26, 2001, Dr. Chaudry examined Ciara and diagnosed her with wax impaction and hearing loss in both ears.  He prescribed that Ciara use mineral oil drops in each ear and return for a follow-up

examination. (Id.at 59.) Ciara's mild bilateral conductive hearing loss was also noted during a physical examination at Brookdale on November 13, 2002. (Id. at 68-69.)

### 3. Vision Problems

Dr. Arthur H. Gerber examined Ciara on April 6, 2001 and October 8, 2002. (Id. at 70.) According to a report by Dr. Gerber dated January 7, 2003, Dr. Gerber treated Ciara for conjuctival follicle in both eyes. (Id.) Dr. Gerber provided that Ciara's corrected vision is 20/25. (Id. at 72.) In his report, he noted that he could not "provide a medical opinion regarding this individual's ability to do work-related activities." (Id. at 74.) On November 13, 2002, a physical examination at Brookdale noted Ciara's myopia (nearsightedness). (Id. at 68.)

### 4. Anemia

Dr. Spivak referred Ciara to a pediatric hematologist at Brookdale, Dr. Sadanandan. On July 25, 2001, Dr. Sadanandan diagnosed Ciara with persistent borderline anemia and microcytic red cell indices (smaller than normal red blood cells). (Id. at 62.) Dr. Sadanandan also noted the possibility of an alpha thalassemia trait.[1] According to his diagnosis, Ciara did not need iron supplements or further testing. (Id.)

### C.    Non-Medical Evidence

Ciara attends school at P.S. 167, where she participates in regular classes. (Id. at 40.) An undated letter from the Plaintiff indicates that Ciara attended classes for additional help three

---

[1] Alpha thalassemia is a condition found in people whose hemoglobin does not produce enough alpha protein. Patients with this condition have smaller than normal red blood cells and mild anemia. Iron supplements have no effect on anemia caused by alpha thalassemia traits. Cooley's Anemia Foundation, About Thalassemia, (2001), available at http://www.thalassemia.org/sections.php?sec=1&.

mornings per week, and her promotion from third to fourth grade was questionable. (Id. at 116.) At the administrative hearing before the ALJ, the Plaintiff testified that Ciara's school had recommended that she attend special education classes. (Id. at 129.) In addition, Ciara's mother, the Plaintiff, testified that she had to leave work regularly to go to Ciara's school when Ciara exhibited behavior problems. (Id. at 128.) Her testimony is supported by documentary evidence, including a November 22, 2002 letter from the principal of P.S. 167 regarding Ciara's behavioral problems and the possibility of suspending her from school as a result of her continued problems. (Id. at 65.)

On January 15, 2003, Ciara's first grade teacher, Ms. Peters, submitted a "Teacher Questionnaire" provided to her by the New York State Office of Temporary and Disability Assistance (OTDA). On the questionnaire, Ms. Peters responded to questions divided into five functional domains. (Id. at 75-80.) Ms. Peters indicated that Ciara had some "very serious" problems in the domain of "Caring for Himself or Herself." (Id. at 79.) In addition, Ms. Peters reported that Ciara had daily problems, some of which might be characterized as "an obvious problem" or "a very serious problem" in the domain of "Attending and Completing Tasks." (Id. at 77.) Specifically, Ms. Peters noted that Ciara had a hard time "waiting for assistance." According to her teacher, when Ciara's needs are not met immediately, she becomes "very frustrated, cries, pushes students, knocks down tables and/or chairs." (Id.)

In the domain of "Acquiring and Using Information," Ms. Peters reported that Ciara had "a slight problem" in "comprehending and doing math problems," "expressing ideas in written form," "learning new material," and "applying problem solving skills in class discussions." (Id. at 76.) Ms. Peters noted that Ciara had no observed problems in the domain of "Interacting and

5

Relating with Others." (Id. at 78.)

## II. Discussion

### A. Standard of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. 42 U.S.C. § 405(g); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). A reviewing court should verify that a claimant had a "full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (quoting Gold v. Sec'y of Health, Educ. and Welfare, 463 F.2d 38, 43 (2d Cir. 1972)).

A full hearing includes a well-developed medical record. Because of the non-adversarial nature of a benefits hearing, where the record is incomplete, an ALJ has an affirmative duty "to develop a claimant's medical history even when the claimant is represented by counsel . . . ." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)). The "treating physician's rule" requires an ALJ to afford greater weight to the medical opinion of the claimant's treating physician than to other evidence before the Social Security Administration. The treating physician's rule, as articulated by the Second Circuit, provides: "the opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." Rosa, 168 F.3d at 78-9; 20 C.F.R. § 404.1527(d)(2). Further, in evaluating medical evidence, an ALJ must give good reasons for the weight the ALJ assigns to the opinions of a claimant's treating source. 20 C.F.R. § 404.1527(d)(2); see Rosa, 168 F.3d at 79 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

### B. Disability Determination for a Child Claimant

To receive benefits, a claimant must be "disabled" within the meaning of the Social Security Act. Shaw, 221 F.3d at 131. Agency rules require the Commissioner to apply a three-step sequential analysis to evaluate whether a child claimant is disabled. See 20 C.F.R. § 416.924(a).

The three required steps are as follows:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.924(b).

2. If not, the Commissioner considers whether the claimant has a "severe impairment" that limits his or her mental or physical ability to do basic work activities. 20 C.F.R. § 416.924(c).

3. If the claimant has a "severe impairment," the Commissioner must decide whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of the enumerated impairments, the Commissioner will automatically consider her disabled, without considering other factors. If the impairment is not "listed" in the regulations, the Commissioner then asks whether the claimant's impairment is functionally equivalent to a listed impairment. 20 C.F.R. § 416.924(d).

### C. The ALJ's Decision

The ALJ acknowledged this three-step analytical framework in his decision regarding Ciara's eligibility for disability benefits. (Tr. 16.) He found that the Plaintiff met the disability requirements of the first two steps, because Ciara was not engaged in gainful activity and because her impairments, including ADHD and anemia, were "severe" within the meaning of 20 C.F.R. § 404.1520(b). In the third step, the ALJ found that although Ciara's impairments were "severe," they did not medically equal nor result in limitations that functionally equal any impairment listed in Appendix 1of the regulations. (Id.)

An impairment meets the Appendix 1 listing requirement if it meets all criteria for a listed impairment. An impairment is medically equal to a listed impairment if the child's medical findings "are at least of equal medical significance to those of a listed impairment." 20 C.F.R. § 416.926(a)(2). An impairment is functionally equal to a listed impairment if it imposes "marked and severe" functional limitations. 20 C.F.R. § 416.926a(b)(2). Medical and functional equivalence will be discussed in turn.

### *1. Medical Equivalence*

The ALJ considered Ciara's condition with reference to listing 112.11 for "ADHD manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." (Tr. 15.) This listing provides that a child's impairment is medically equivalent to ADHD where medical documentation shows (a) marked inattention, (b) marked impulsiveness, and (c) marked hyperactivity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part B, § 112.11. To medically equal the ADHD listing, there must also be marked impairment in at least two of the following areas: (a) age-appropriate cognitive/communicative functioning; (b) age-appropriate social functioning; (c) age-appropriate personal functioning; or (d) maintaining concentration, persistence or pace. 20 C.F.R. Pt. 404, Subpt. P., App 1, Part B, § 112.11B (incorporating § 112.02).

In view of these standards, the ALJ found that Ciara's condition was not of equal significance to ADHD as defined by Appendix 1, because Ciara's symptoms had improved with medication. (Tr. 15.) To support this conclusion, the ALJ cited reports from Ciara's mother and teacher, which indicate that Ciara's behavior had improved over time. (<u>Id.</u> at 14.) The ALJ's opinion does not provide citations to any medical reports regarding Ciara's response to Ritalin.

8

As submitted, the Administrative Record includes no such medical conclusions.

### 2. Functional Equivalence

A determination of functional equivalence for a child requires that the Commissioner make an express finding for each of six areas of function known as "domains." See Thompson v. Barnhart, No. 02-CV-4930, 2004 WL 896663, at *4 (E.D.N.Y. Mar. 26, 2004); 20 C.F.R. § 416.926a. The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for himself or herself; and (6) health and physical well-being. See 20 C.F.R. § 416.926a(g)-(1). To be functionally equivalent, a child's impairment must result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. §416.926a. A "marked" limitation is characterized as an impairment that "seriously interferes with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). An "extreme" limitation is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.92a(e)(3)(I).

The ALJ found that Ciara's condition was not functionally equal to one of the impairments listed in Appendix 1 of the regulations, because she had less than marked limitation in the domains of acquiring and using information, attending and completing tasks, and interacting and relating to others. (Tr. 16.) The ALJ explicitly relied on the findings of non-examining physician Dr. Wing, who reported that Ciara had less than marked limitation in acquiring and using information and attending and completing tasks. (Id.) In addition, the ALJ reported that his decision was informed by Ciara's participation in regular classes, her teacher's report that she had improved with medication, and Ciara's treatment notes from Brookdale. (Id.)

9

### D.     The Plaintiff's Claims

#### *1. Failure to Consider Three of Six Domains for Functional Equivalence*

The ALJ erred in his analysis of "severe impairment," the third step of the sequential analysis. The ALJ improperly determined whether the claimant has an impairment functionally equivalent to one listed in Appendix 1 of the regulations because he failed to make findings in each of the six required domains. Specifically, the ALJ made no express findings with regard to Ciara's impairment in the domains of moving about and manipulating objects, caring for herself, and the cumulative effects of impairments on health and physical well-being.

An ALJ opinion must contain "a sufficient explanation of [the ALJ's] reasoning to permit the reviewing court to judge the adequacy of his conclusion." Diaz v. Apfel, 994 F. Supp. 541, 548 (S.D.N.Y. 1998) (quoting Rivera v. Sullivan, 771 F. Supp. 1339, 1354 (S.D.N.Y. 1991)). In addition, an ALJ must acknowledge relevant evidence or explain its implicit rejection. Rivera, 771 F. Supp. at 1354. "Unless the ALJ explains the basis for his decision, it is impossible for the claimant and for a reviewing court to determine whether the ALJ's decision was supported by substantial evidence." Reyzina v. Apfel, No. 98-CV-1288, 1999 WL 65995, at *13 (E.D.N.Y. Feb. 10, 1999) (quoting Booker v. Heckler, No. 83-CV-5300, 1984 WL 622, at *3 (S.D.N.Y. July 19, 1984)).

In the current case, the ALJ failed to make express findings in three of six domains. Thus, this court may not determine whether the ALJ's determination of no functional equivalence was supported by substantial evidence. The Defendant's characterization of the record as substantially supporting the conclusion that Ciara does not have extreme or marked impairments in the three domains for which the ALJ did not make any finding is irrelevant. "A reviewing court 'may not

accept appellate counsel's post hoc rationalizations for agency action.'" Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).

In addition, the ALJ's determination implicitly rejects evidence in the record, specifically the "Teacher Report" completed by Ciara's teacher, Ms. Peters. (Tr. 75-80.) In that report, Ms. Peters indicated that Ciara had some "very serious" problems in the domain of "Caring for Himself or Herself" (id. at 79) as well in the domain of "Attending to and Completing Tasks." (Id. at 77.) As provided by the regulations, an ALJ should consider "all relevant information" in the record, including that from non-medical sources such as teachers. 20 C.F.R. § 416.924a(a). When evaluating the effects of the claimant's impairment(s) on her functioning, the ALJ should consider evidence received from the claimant's school, including "teacher questionnaires, teacher checklists, group achievement testing, and report cards" 20 C.F.R. § 416.924a(b)(7)(ii). The ALJ's express consideration of the "Teacher Report" is particularly important, because Ms. Peters' evaluation directly conflicts with that of reviewing physician Dr. Wing. Wing found that the only domain in which Ciara exhibited a marked limitation was that of "Interacting and Relating to Others." (Tr.107.) In contrast, Ms. Peters noted that Ciara had no observed problems in that domain. (Id. at 78.) Overall, the ALJ improperly evaluated the effects of Ciara's impairment on her functional capacity, because he failed to expressly consider evidence submitted by her teacher.

On remand, the ALJ should meaningfully consider the functional equivalence of Ciara's condition as prescribed by 20 C.F.R. § 416.926a. First, he should make a full examination of the evidence in the record regarding the nature and extent of Ciara's limitations in the domains of moving about and manipulating objects, caring for herself, and the cumulative effects of

11

impairments on health and physical well-being. Second, the ALJ should make an express finding for each of the six domains required for a determination of functional equivalence based on all of the evidence in the record.

## 2. *Failure to Meet Obligation to Develop Record and Treating Physician Rule*

The ALJ also erred in his analysis of whether the claimant has an impairment medically or functionally equivalent to one listed in Appendix 1 of the regulations because he failed to investigate the facts and present them in accordance with his obligation to develop the record. See 20 C.F.R. § 1512(d), (e). Specifically, the ALJ failed to attempt to obtain more detailed information from Ciara's physicians at Brookdale as well as her primary physician, Dr. Spivak. In sum, the ALJ's decision is not supported by substantial evidence because the administrative record lacks specific medical determinations from Ciara's treating physicians regarding the nature and extent of her impairments.

The ALJ who conducts an administrative hearing has an affirmative duty to develop the record where necessary to adequately assess the basis for decision. Santos ex rel. Hollis v. Barnhart, No. 04-CV-2050, 2005 WL 119359, at *5 (E.D.N.Y. Jan. 7, 2005). The ALJ's duty to develop the record is heightened when a claimant proceeds pro se; the "ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" Id. (quoting Cruz v. Sullivan, 912 F.2d 8, 11 (2d. Cir. 1990)).

Consistent with the regulations, the Second Circuit gives the opinion of a treating physician "controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999) (citing 20 C.F.R. §§ 404.1527(d)(2)). The "combined force of the treating physician rule and of the duty to

conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability." Santos, 2005 WL 119359, at *6 (quoting Brown v. Barnhart, No. 02-CV-4523, 2003 WL 1888727, *8 (S.D.N.Y. Apr. 15, 2003)).

In the instant case, the ALJ over-relied on the evaluation of state agency physician Dr. Wing and failed to obtain more than sparse notes from Ciara's primary physician and psychiatric care givers at Brookdale. Dr. Wing never examined Ciara and completed a record review as part of the Social Security Agency's initial determination of the Plaintiff's SSI claim. (Tr. 105-110.) Due to the frequency and duration of their visits with Ciara, physicians in the Psychiatric Department at Brookdale, as well as Dr. Spivak, may have a "unique perspective" and an important "longitudinal picture" for evaluating Ciara's condition. See 20 C.F.R.§ 404.1527(d)(2). As recognized by the Second Circuit, the opinions of non-examining medical personnel, such as Dr. Wing, "cannot in themselves constitute substantial evidence overriding the opinions of examining physicians." Havas v. Bowen, 804 F.2d 783, 786 (2d Cir. 1985); see also Hicks v. Apfel, No. 98-CV-6648, 1999 WL 342280, at *8, (E.D.N.Y. May 21, 1999).

The medical report of Ciara's primary physician, Dr. Spivak, indicates Ciara's diagnoses: ADHD, anemia, and urinary tract infection. However, the report does not provide information about the severity of these conditions. (Tr. 111-114.) Moreover, Dr. Spivak does not comment on Ciara's response to medication for ADHD. (Id.) The ALJ cites a letter from Brookdale dated September 9, 2004 (Exhibit 10F) for the proposition that Ciara "was placed on Ritalin on April 14, 2003 and has responded well to medication." (Id. at 16.) In the form that Exhibit 10F was

13

submitted to this court as part of the Administrative Record, it does not support such a finding.[2]

None of the documents on record provided by the Psychiatry Department at Brookdale report on Ciara's response to medication. This information is central to the Plaintiff's claim, because the ALJ expressly relied on Ciara's positive response to medication in finding that her condition was neither medically nor functionally equivalent to a listed impairment.

When an ALJ fails to adequately complete the record, the reviewing court may remand for administrative proceedings to further develop evidence. Green v. Apfel, 25 Fed. Appx. 54, 56 (2d Cir. 2001). On remand, the ALJ should develop the record as prescribed by 20 C.F.R. § 1512(d), (e). Specifically, he should attempt to obtain more detailed evaluations from Dr. Spivak as well as the Psychiatric Department at Brookdale. In addition, the ALJ should review Exhibit 10F in its original form, if possible.

### E. Remand or Award of Benefits

"When the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," reversal of the ALJ decision and remand for the calculation of benefits is appropriate. Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). However, "when there are gaps in the administrative record or the ALJ has applied an improper legal standard," a court should remand the case to the Commissioner for the further development of the record. Id. As there are numerous areas that the ALJ failed to consider in reaching his decision, remand is appropriate in this case.

---

[2]The copy of Exhibit 10F submitted as part of the Administrative Record is a single page. This court recognizes that the original document might have included subsequent pages that are not part of the record.

**III.	Conclusion**

For the foregoing reasons, the Commissioner and the Plaintiff's motions for judgment on the pleadings is DENIED.  The case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.


SO ORDERED.

Dated:	August 17, 2006	               /s/                    
	Brooklyn, N.Y.	Nicholas G. Garaufis
	 	United States District Judge